CITY OF JACKSON, Missouri, Respondent,

v.

Tab RAPP, Appellant.

No. 49433.

Missouri Court of Appeals, Eastern District, Southern Division.

Oct. 29, 1985.

Waldron & Walter, Scott E. Walter, Jackson, for appellant.

Lichtenegger, Knowlan, Phillips & Ellis, Jack H. Knowlan, Jr., Jackson, for respondent.

DOWD, Presiding Judge.

Defendant was convicted of careless and reckless driving under Ordinance No. 1747(h) of the City of Jackson, Missouri in the Municipal Court. Upon a trial de novo in the Circuit Court, sitting without a jury, he was again found guilty and fined $150.00 and sentenced to two days incarceration in the county jail. This appeal followed. We affirm.

Defendant contends that the evidence is insufficient as a matter of law to support a conviction for careless and reckless driv-

ing[1] for the reason that his acts did not significantly increase the zone of danger beyond that incurred in the ordinary course of driving.

■ Upon an appeal from a conviction for violation of a municipal ordinance the evidence must be construed most strongly in favor of the result reached in the trial court and the facts in evidence and all inferences reasonably to be drawn therefrom are to be considered in a light most favorable to the city and all evidence and inferences to the contrary are to be disregarded. *City of Kansas City v. Reagan,* 553 S.W.2d 552 (Mo.App.1977); *Kansas City v. Douglas,* 483 S.W.2d 760, 761 (Mo. App.1972).

Applying this standard of review to the record in the present action, the trial court, sitting as the trier of facts, could reasonably have found the following:

On February 4, 1984, at approximately 3:35 a.m. Tab Rapp was the driver of a 1974 Nova heading west on Highway 61 in the City of Jackson, Missouri. He had earlier attended a fraternity party and was returning home with his three passengers by this route. Sargeant Norman Tuschoff of the Jackson Police Department was on routine patrol traveling east on Highway 61 when he observed the Rapp's auto approaching his patrol car.

The officer noticed that the right wheels of the Rapp auto were entirely off the pavement so that one half of the auto straddled the shoulder of the road. The auto then came off the shoulder and began to traverse the center line of the two lane highway. At this point, the officer pulled his patrol car over to the right hand side of the pavement to avoid a potential collision in the event that the Rapp auto were to continue its course across the center line.

---

**1.** Ordinance No. 1747(h) of the City of Jackson, Missouri provides as follows:

CARELESS AND RECKLESS DRIVING— Whenever in this ordinance or state law regulating traffic, or any subsequent or previous enactment of any provisions, regulations relating to the same intent or subject matter thereof, any driver who shall recklessly and carelessly disregard by non-compliance those provisions, regulation or regulations authorized to protect person, property, life and limb, such recklessness and careless disregard and non-compliance within the meaning of this ordinance shall be regarded as prima facie evidence of careless and reckless driving and so punished.

After the auto passed, the officer turned his patrol car around to follow the defendant's auto. As the Rapp auto approached Goose Creek Bridge from the east it veered off the traveled portion of the road. It was then in direct alignment with the bannister of the bridge and approximately two auto lengths away when it suddenly veered back into the westbound lane of the bridge. It again crossed the center line before resuming its course. Shortly thereafter, as defendant's auto approached a second bridge, the Hubble Creek Bridge, it wove across the dividing line yet another time. Officer Tuschoff pulled the auto over after it exited from the bridge.

At trial, Officer Tuschoff testified that upon informing Tab Rapp of the reason for the stop, the defendant commented that he must have been sleeping when his car approached the Goose Creek Bridge. He was alerted when a companion yelled, "Tab, wake up," and was able to avoid colliding into the bannister of the bridge.

■ We note initially, there is no hard and fast definition of the concept of careless or reckless driving, but rather that is a matter to be decided as a question of fact in each particular case. *Kansas City v. Douglas,* 483 S.W.2d 760, 762 (Mo.App. 1972); *City of Kansas City v. Scanland,* 506 S.W.2d 18, 21 (Mo.App.1974). At a minimum, there must be conduct which shows under all the conditions existing at the time, that the property of another or the life or limb of any person is endangered. *State v. Todd,* 477 S.W.2d 725, 729 (Mo.App.1972); *City of Kansas City v. Scanland,* 506 S.W.2d at 21. However, it is not necessary to show that a collision occurred to prove endangerment. *See City of Kansas City v. Douglas,* 483 S.W.2d at 763; *City of Springfield v. Hines,* 622 S.W.2d 32, 33–34 (Mo.App.1981).

■ Defendant in his brief argues that the record is lacking evidence that his actions were such as to endanger the property, life, or limb of another as required by *Todd, supra.* To this effect, he points to the absence of evidence that there were other autos in the zone of danger when his

auto crossed the center line and again when he nearly collided with the bannister of Goose Creek Bridge. Defendant testified that he had no recollection of passing Officer Tuschoff's patrol car. This argument is totally meritless in that it ignores the inherent danger posed to defendant's passengers and to Officer Tuschoff by his careless acts. The existence of endangerment was established before the trier of facts below in two separate incidents. First, the defendant's auto crossed the center line as Officer Tuschoff was approaching. This occurrence resulted in the officer pulling his patrol auto over to the shoulder of the road to avoid a collision were the defendant to continue his present course. Second, the defendant then nearly collided with the bannister of Goose Creek Bridge. Officer Tuschoff witnessing the incident, felt the likelihood of a collision to be imminent and placed his hand on the microphone of his radio prepared to call for assistance.

The present case is distinguishable from the situation presented in *State v. Todd,* 477 S.W.2d 725, 729 (Mo.App.1972) in which the defendant's conviction of careless and reckless driving was reversed on the ground that there was no showing of endangerment to property or person from the defendant's actions. In *Todd,* the defendant, the sole occupant, caused his automobile to spin around for two and one half rotations in the middle of the intersection of a gravel road. Unlike the present case, there were neither passengers, nor other automobiles near enough to be endangered by defendant's acts.

■ Defendant next argues that the city failed to show the requisite mental state for the offense charged. By means of analogue, he suggests that loss of consciousness from the onset of sleep is an involuntary act akin to experiencing a heart attack or a seizure. This proposition is unfounded, and puts the cart before the horse. Herein, defendant's loss of consciousness at the wheel was not the result of an uncontrollable physical malady, but the result of his own carelessness in driving an automobile in a state of voluntarily

imposed exhaustion such that he fell asleep at the wheel. *See State v. Hunziker,* 638 S.W.2d 333, 336 (Mo.App.1982) wherein the defendant was convicted of careless and reckless driving upon proof that he fell asleep while driving his automobile, resulting in a collision with another motorist.

We find the record amply supports the finding of the court below that the defendant's conduct constitutes careless and reckless driving in violation of Ordinance No. 1747(h) of the City of Jackson, Missouri.

The judgment is affirmed.

REINHARD and CRIST, JJ., concur.