

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD85805** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **September 26, 2023** |
| **REX BRADEN GASH,** | ) | |
| | ) | |
| **Appellant.** | ) | |

### Appeal from the Circuit Court of Lafayette County, Missouri
The Honorable Kelly Halford Rose, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Cynthia L. Martin, Judge, and, Chad Gaddie, Special Judge

Rex Braden Gash ("Gash") appeals from the trial court's judgment convicting him of operating a motor vehicle in a careless and imprudent manner involving an accident. Gash argues on appeal there was insufficient evidence from which a rational trier of fact could find him guilty beyond a reasonable doubt.  Because the evidence was sufficient to permit a rational fact-finder to conclude that Gash operated his vehicle in a careless and imprudent manner in violation of section 304.012,[1] the trial court's judgment is affirmed.

---

[1] All statutory references are to RSMo 2016 as supplemented through March 28, 2021, unless otherwise indicated.

## Factual and Procedural Background

The evidence, viewed in the light most favorable to the verdict,[2] establishes that around 8:25 p.m. on March 28, 2021, Gash was operating a "skid loader"[3] in the eastbound lane of Missouri Highway 20 ("Highway 20") in Lafayette, County. That stretch of Highway 20 is a two-lane road with curves, several hill crests, and no lighting. There were no signs, cones, or warning notices posted to put other drivers on notice that Gash was operating the skid loader on Highway 20. The record does not explain why Gash was operating a skid loader on Highway 20.

Victim was traveling eastbound on Highway 20 in a Volkswagen Beetle. At around 8:25 p.m., Victim crested a hill and immediately collided with the rear end of Gash's skid loader. As a result of the crash, Victim was seriously injured.

The Missouri State Highway Patrol dispatched a state trooper to the scene. The trooper investigated the crash by measuring the distance from a utility pole to the crash site, evaluating the skid marks and gouge marks on the road, as well as taking pictures of both vehicles.[4] Using this information, the trooper prepared an accident report and issued

_____

[2]"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but, rather, accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence and inferences." *State v. Naylor*, 510 S.W.3d 855, 858-59 (Mo. banc 2017) (internal quotations and brackets omitted).

[3]A skid loader is a piece of construction equipment that is commonly referred to as a Bobcat (a brand name).

[4]The trooper returned to the crash scene the following day to take more photographs of the scene and roadway because the area was too dark on the night of the crash for clear photographs, even with illumination provided by headlights from the trooper's vehicle.

Gash a citation for careless and imprudent driving resulting in an accident, a violation of section 304.012.

At a bench trial on October 12, 2022, the State called two witnesses. Victim testified she was very familiar with Highway 20, as she traveled it often to reach her home. Victim also testified that at the time of the crash Highway 20 was "almost pitch black," and upon cresting the hill she had no time to apply her brakes between seeing and colliding with Gash's skid loader. The State's second witness, the trooper, testified that, while unusual, if skid loaders are operating at night on public highways they are usually accompanied by a flag person, traffic cones, extra lighting, or another form of early warning for other drivers. Although Gash reported at the scene that work lights on the rear of the skid loader were on before the collision, Victim testified she saw no lights on the skid loader, and the trooper testified the lights were operational, but were not on, when he saw the skid loader after the accident. The trooper testified that there was no evidence at the scene that would lead him to conclude that Victim's driving contributed to causing the accident.

At the close of the State's case, Gash moved for judgment of acquittal on the grounds of lack of evidence to prove beyond a reasonable doubt that he violated section 304.012. The trial court denied Gash's motion, entered a judgment ("Judgment") convicting Gash of the class A misdemeanor of driving in a careless and imprudent manner involving an accident, and assessed Gash a fine in the amount of $150.00.

Gash appeals.

3

## Standard of Review

Under Rule 29.11(e), a challenge to the sufficiency of the evidence is preserved on appeal even if it has not been raised in the trial court. "When reviewing the sufficiency of the evidence, the standard of review on appeal from a bench-tried case is the same as the standard used on appeal of a case tried to a jury." *State v. Summers*, 653 S.W.3d 155, 166 (Mo. App. W.D. 2022) (citation omitted). Additionally, "this Court does not weigh the evidence but, rather, accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence and inferences." *State v. Naylor*, 510 S.W.3d 855, 858-59 (Mo. banc 2017) (internal quotations and brackets omitted). We review the evidence in a limited manner only to determine if "in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 859 (quoting *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotations omitted).

## Analysis

In his single point on appeal, Gash argues that the trial court erred in overruling his motion for judgment of acquittal. Gash claims in his point relied on that there is insufficient evidence to sustain his conviction because of the State's failure to present evidence reflecting "the manner in which" he was required to post warning signs. Gash refines this claim of error in the argument portion of his brief as the State's failure to present evidence "of the need or requirement for a warning sign or other road sign."

4

Gash contends that without evidence of the need or requirement for a warning sign or other road sign no rational trier-of-fact could find beyond a reasonable doubt that he was guilty of driving carelessly and imprudently under section 304.012. The statute provides:

> 1. Every person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.
>
> 2. Any person who violates the provisions of this section is guilty of a class B misdemeanor, unless an accident is involved then it shall be a class A misdemeanor.

"Section [304.012][5] creates a blanket-type offense and is a salutary statute to cover the multitude of situations which may arise from the operation of a motor vehicle which cannot be detailed in specific statutes." *State v. Kaikkonen*, 756 S.W.2d 643, 645 (Mo. App. E.D. 1988). A person drives carelessly and imprudently if there is "conduct which shows under all the circumstances and under the conditions existing at the time, that the property of another or the life or limb of any person is endangered." *State v. Todd*, 477 S.W.2d 725, 728 (Mo. App. 1972).[6] "When such circumstances and conditions are shown, the defendant has been found guilty of careless driving." *Id.*

---

[5]The statute relied on in *Kaikkonen* for the offense of careless and imprudent driving was then numbered as section 304.010. Section 304.010 was renumbered to section 304.012 effective March 13, 1996. The version of the careless and imprudent driving statute at issue in *Kaikkonen* is virtually identical to the statute charged in this case, with the exception of the latter extending the provision to "the roads and highways" as opposed to simply "the highways." *Compare* RSMo section 304.010 (1987), *with* RSMo section 304.012 (2016).

[6]The statute relied on in *Todd* is identical to the statute relied on in *Kaikkonen*. *See id.*

5

The plain language of section 304.012.1 identifies the elements of careless and imprudent driving as (1) operating a motor vehicle on a road or highway, (2) in a manner that is not careful and prudent or at a rate of speed, (3) thereby endangering the life or limb of another.[7] Where an accident is involved, section 304.012.2 requires the addition of a fourth element: (4) resulting in an accident. Though Gash does not expressly articulate which of the essential elements of a careless and imprudent driving charge he contends were not supported by sufficient evidence, his argument can be fairly construed to implicate the second element.

The terms "careful" and "prudent" are not defined in section 304.012. They are modified, however, by the requirement in section 304.012.1 that a person shall "exercise the highest degree of care" in the manner in which they operate a motor vehicle on a road or highway. In other words, a person's operation of a motor vehicle must be "careful" and "prudent" in a manner that is consistent with the exercise of "the highest degree of care." The phrase "exercise the highest degree of care" is also not defined in section 304.012.

---

[7]*Cf. State v. Book*, 436 S.W.3d 671, 680 (Mo. App. S.D. 2014), *and State v. Goeman*, 386 S.W.3d 873, 877-78 (Mo. App. S.D. 2012). These cases suggest that the essential elements of a careless and imprudent driving charge are that (1) defendant operated a motor vehicle on a highway, (2) in an unsafe manner, (3) thereby endangering the property of another, and (4) in so doing operated a vehicle in a careless and imprudent manner. Section 304.102 does not use the term "unsafe." Moreover, it is unclear whether the fourth element identified in these cases is intended as an independent element, or is instead the natural culmination of the three preceding elements. *See* discussion in *Goeman*, 386 S.W.3d at 877-78, 880-81. We believe it more appropriate to identify the essential elements of careless and imprudent driving using the language of section 304.012.

6

In the absence of statutory definitions, words used in a statute are to be given their plain and ordinary meaning as defined in the dictionary. *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010) (citation omitted). The word "careful" means "marked by painstaking effort to avoid errors or omissions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 338 (Unabridged ed. 2002). The word "prudent" means "marked by wisdom or judiciousness." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1828 (Unabridged ed. 2002). The phrase "highest degree of care" is not defined in the standard dictionary, but is defined in Black's Law Dictionary as "[t]he degree of care exercised commensurate with the danger involved." BLACK'S LAW DICTIONARY 263 (11th ed. 2019). In the civil negligence context, "highest degree of care" means "that degree of care that a very careful person would use under the same or similar circumstances." MAI 11.01. These definitions combine to require the State to prove the second essential element of the crime of careless and imprudent driving with evidence that establishes, beyond a reasonable doubt, that a person operating a vehicle on a road or highway failed to take painstaking efforts to wisely and judiciously avoid errors or omissions in the manner expected of a very careful person in the same or similar circumstances.[8]

_____

[8]MAI-CR 3d 332.40 is the approved jury instruction for careless and imprudent driving in violation of section 304.012. The verdict director was revised effective July 1, 1997, in conjunction with the renumbering of the careless and imprudent driving statute from section 304.010 to 304.012. The current version of the verdict director includes no reference to the statutory requirement that a person operate a motor vehicle exercising the highest degree of care, although the predecessor version of the verdict director did require a finding that a person failed to exercise the highest degree of care. *See State v. Simmering*, 640 S.W.2d 146, 147 (Mo. App. E.D. 1982); *State v. Durion*, 512 S.W.2d

Relying on *City of St. Louis v. Judd*, Gash argues the State failed to meet this burden because it only presented evidence that a crash occurred and no other evidence that Gash was driving carelessly or imprudently. *See City of St. Louis v. Judd*, 193 S.W.2d 917, 918 (Mo. App. St.L.D. 1946) (finding evidence merely showing a collision occurred is alone insufficient to prove guilt for the offense charged).[9] Specifically, Gash points to the trooper's trial testimony that a lack of warning signs supported the trooper's decision to issue Gash a citation, even though the trooper was unaware of any specific statute or other legal authority requiring Gash to post warning signs before operating a skid loader on the roads. Gash points to the trooper's testimony that skid loaders, like the one operated by Gash, are legally permitted to operate on Highway 20; that Gash was driving in the correct lane on Highway 20 properly between the lines; and that the trooper made no determinations as to the speed of either vehicle or Victim's line of sight. Finally, Gash refers to the trooper's testimony that there were working visible lights on the rear of the skid loader. Gash contends that this evidence establishes only that an accident occurred and was insufficient to prove he was driving carelessly and imprudently.

---

833, 834 (Mo. App. K.C.D. 1974). The Notes on Use for MAI-CR 3d 332.40 do not explain why the reference to exercise of the highest degree of care was removed from the verdict director at the time it was revised in 1997. We need not address that issue, however, in this bench tried case.

[9]In *Judd* the court held that mere evidence of a collision alone was insufficient to prove violation of St. Louis City Ordinance No. 42260. Although the language of this ordinance is nearly identical to RSMo section 304.012, the latter includes a requirement that motorists "exercise the highest degree of care."

8

We disagree. Gash cites no authority for the proposition that careful and prudent operation of a motor vehicle can only be established by reference to a statute or other legal authority imposing a duty or obligation on a driver to take (or not take) certain action. It is not dispositive, therefore, that the State failed to put on evidence of a particular statute or legal authority that would have required Gash to post warning signs or other road signs alerting other drivers of his presence on the roadway in a skid loader. Instead, as stated in *Kaikkonen*, careless and imprudent driving is a blanket-type offense created under section 304.012 to cover the great number of factual situations that can arise from operating a motor vehicle. *Kaikkonen*, 756 S.W.2d 643, 645. As a result, the determination of whether someone was driving carelessly and imprudently is fact-specific and appropriately subject to reasonable inferences drawn from those facts. *See e.g., State v. Byrne*, 503 S.W.2d 693, 695 (Mo. banc 1973) (holding there was sufficient evidence to convict a driver who collided with the rear end of another vehicle entering the highway on a two-lane road with clear visibility and no other cars); *State v. Goeman*, 386 S.W.3d 873, 879-880 (Mo. App. S.D. 2012) (holding a driver who appeared to witnesses to be racing another car during poor weather conditions on a road with a sharp curve was driving carelessly and imprudently); *but see*, *e.g.*, *Todd*, 477 S.W.2d 725, 729 (holding evidence was insufficient to prove a driver who spun his car multiple times in an intersection was driving carelessly and imprudently in the absence of evidence that a person or another's property was in proximity). By design, the encompassing nature of section 304.012 means certain facts associated with the operation of a motor vehicle could be considered careless and imprudent in some contexts but not in others. Gash's

9

insistence on proof of statutory or other legal authority requiring him to post warning signs or other road signs alerting of his presence as a condition of finding that he operated the skid loader in a careless and imprudent manner is misguided.

In a criminal case "[t]he trial court is free to believe or disbelieve all, part or none of the testimony of any witnesses." *State v. Emmanuel*, 667 S.W.3d 664, 671 (Mo. App. W.D. 2023) (quoting *State v. Canady*, 476 S.W.3d 346, 354 (Mo. App. W.D. 2015). The appellate court does not reweigh any evidence instead "[t]he fact-finder determines the credibility of witnesses, resolves conflicts in testimony, and weighs the evidence." *Id.* Here, the evidence at trial viewed in the light most favorable to the judgment established that Gash was operating the skid loader at night when it was very dark, and on a section of Highway 20 that has many hill crests, curves, and no lighting. The evidence established that Victim was very familiar with Highway 20 and did not see, nor have any advance notice about the impending presence of, the skid loader in the roadway until she crested a hill, after which her impact with the rear of the skid loader was immediate, allowing no time to apply her brakes. The evidence established that regardless of whether independently required by statute or other legal authority, no road signs or other warning signs were posted to alert Victim of the presence of the skid loader in the roadway. There was no evidence that Victim was traveling in other than an ordinary and normal fashion for the roadway conditions. Though Gash reported to a responding officer at the scene that lights on the back of the skid loader were on before the crash, Victim denied seeing any lights on the skid loader before the crash, and the trooper saw no lights operating on the skid loader when he investigated the crash though he

10

determined the lights were operational. However, according to the trooper's testimony, even if the lights on the skid loader had been illuminated it would have been very difficult for other drivers to see the skid loader because of how dark it was.

There is sufficient evidence from which the trial court could have found, beyond a reasonable doubt, that Gash's operation of a skid loader on this specific stretch of Highway 20 at night was careless and imprudent because Gash failed to take painstaking efforts to wisely and judiciously avoid errors or omissions in the manner expected of a very careful person in the same or similar circumstances.

Gash's point on appeal is denied.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

11